IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EDWARD PLANK, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-2507 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of Social Security | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                              July 25, 2022

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied the application of James Edward Plank ("Plank") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq*. Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 17); Defendant's Response to Request for Review ("Def. Br.") (Doc. 18); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 14) (hereinafter "R."). Plaintiff asks the Court to vacate the Commissioner's final administrative decision and remand for further proceedings. The Commissioner seeks the entry of an order affirming the decision of the ALJ that the Plaintiff was not disabled. For the reasons set forth below, we affirm.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I.      **FACTUAL AND PROCEDURAL HISTORY**

    A.      **Benefits application and early treatment**

Plank filed an application for DIB on August 30, 2016. (R. 15.) He dated the onset of his alleged disability to March 1, 2016, when he had a recurrence of atrial fibrillation, and at which time he was 55 years old. (R. 15, 21.) He had a high school education and previously worked as an electric motor repairer. (R. 21.) He was laid off from his job in December 2015 and his earnings records reflected no subsequent employment, although there were indications in his medical records that he had been seeking other employment in mid-2016. (R. 17, 20.)

Plank contended that he was unable to work after March 2016 due to high blood pressure, atrial fibrillation, hyperlipidemia, paroxysmal atrial fibrillation, and a pseudoaneurysm. (R. 18.) He described symptoms of shortness of breath, particularly on significant activity such as walking up a flight of stairs; an inability to tolerate heat; and fatigue. (*Id.*) In June 2016 he underwent a pulmonary vein isolation / ablation procedure to address the fibrillation, as he had done previously in February 2013. (R. 19.) Studies showed significant improvement following the June 2016 procedure. (R. 20.)

    B.      **Adjudication of application**

Based on the records before it at that time, the state agency denied Plank's claim on December 27, 2016. Plank requested a hearing and, through counsel, submitted updated medical records of his treatment with his cardiologist. When asked at the December 4, 2018 hearing why he would not be able to work on his feet anymore, he cited the need to rest after a period of activity. (R. 37-39.) He estimated that he could lift 10-15 lbs. but not carry such weight for extended periods. (R. 40.)

The ALJ issued his decision on February 25, 2019. He agreed that Plank could not perform any of his past relevant work. He determined, however, that Plank was not disabled in that he

retained the ability to meet the demands of work at the medium exertional level and that there were other jobs that existed in significant numbers in the national economy that he could perform. (R. 21-22.)

Plank sought review in the Appeals Council but that body found no reason to set aside the ALJ's decision, leaving it the final decision of the Commissioner. (R. 1-6.) This litigation followed.

## II.   STANDARD OF REVIEW

This Court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.   DECISION UNDER REVIEW

The issue before the ALJ at the time of his February 25, 2019 decision was whether Plank had been disabled within the meaning of the Act at any time since his March 1, 2016 alleged onset date. In making this determination, he relied upon the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At Step One, the ALJ found that Plank had not engaged in substantial gainful activity since the alleged onset date. (R. 17.) At Step Two, he found that Plank had demonstrated that he suffered from a severe, medically-determinable impairment, *e.g.*, one

3

that causes functional limitations and has more than a *de minimus* effect on his ability to perform basic work activities. (*Id*.) At Step Three, the ALJ concluded that Plank did not have an impairment or combination of impairments that satisfy the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, and therefore could not establish his entitlement to benefits on that basis, requiring that the evaluation process continue. (R. 17-18.) Plaintiff does not challenge these findings.

The ALJ then considered Plank's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). If Plank could perform work at only the "light" or "sedentary" exertional levels, he would have been disabled by operation of the "Grid" regulations. The ALJ determined, however, that:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can have no exposure to dust, fumes, and pulmonary irritants. He can have no exposure to temperature extremes. He can never climb ladders, ropes, or scaffolds. He cannot have exposure to hazards.**

(R. 18) (bold in original). Applying this RFC, and in light of the fact that Plank's past relevant work was performed at the "very heavy" exertional level, the ALJ found at Step Four that Plaintiff was unable to perform his past relevant work. (R. 21.) The ALJ then proceeded to Step Five to determine whether Plank was capable of performing any other jobs that exist in significant numbers in the national economy. This analysis took into account that Plank was in the "advanced age" category as of his alleged disability onset date and that he had at least a high school education. (R. 21.) Inasmuch as the ALJ had found that Plank could perform a limited range of what he characterized as medium work, and in light of the testimony of a vocational expert ("VE") concerning jobs that could be performed by someone with Plank's vocational profile and RFC, the ALJ concluded that there was other work that Plank could perform. (R. 21-22.) Accordingly, he

4

found that Plank had not been under a disability as defined in the Act at any time from March 1, 2016 to the date of his decision. (R. 22.)

IV.     **DISCUSSION**

Plaintiff contends that the ALJ's finding as to his RFC, which led to the adverse finding at Step Five, is the product of legal error and is not supported by substantial evidence. He sets forth two bases for his request that the Court reverse the ALJ's decision. First, he contends that the ALJ improperly omitted limitations from his RFC finding that would have been relevant to his ability to *safely* perform the occupations identified by the VE and cited by the ALJ at Step Five. (Pl. Br. at 3-8.) Second, he asserts that the ALJ did not properly justify the RFC finding as to how Plank's activities of daily living supported a finding that he could perform work at the medium exertional level and where the ALJ performed only a perfunctory analysis of the impact of his obesity on his impairments. (*Id.* at 8-17.) As did the Commissioner in her response, we address Plank's contentions in reverse order.

    **A.     The ALJ adequately supported his RFC finding.**

Plaintiff contends that the ALJ did not adequately justify his RFC finding when he relied upon activities of daily living to support his conclusion about the exertional level that Plank could perform and where he devoted little discussion to how Plank's obesity might affect his ability to work. To provide context for these contentions, we first recount the explanation the ALJ provided for the RFC finding he made:

> Based upon the evidence of record, certain limitations on the claimant's ability to perform work activities are warranted. The limitation to medium work with no climbing ladders, ropes, or scaffolds accommodates symptoms arising from the heart condition, as well as the effect that obesity may have on this condition and resulting symptoms (i.e. 5F/7). He can have no exposure to dust, fumes, pulmonary irritants, or temperature extremes because these environmental irritants may trigger or exacerbate his symptoms, such as shortness of breath. Finally, he cannot have exposure to

> hazards to accommodate the effect that his symptoms, medication side effect, or both may have on his ability to work safely around hazards. The evidence of record does not support finding any greater limitations.
>
> With regard to the subjective evaluation of symptoms, the undersigned finds the claimant's allegations of disabling symptoms and limitations are inconsistent with and unsupported by the evidence of record. Treatment records document that his ejection fraction[2] significantly improved following the procedure in 2016 (1F/4). He had recurrent symptoms in conjunction with treatment for a dental condition in 2017, but overall his symptoms improved and he is doing well (1F/16; 5F/7, 16). The claimant's reported activities, which include performing personal care tasks with no problem, cleaning his house for several hours a few times per week, and mowing the law[n] for two to three hours once a week, demonstrate a capacity for greater functioning than alleged by the claimant (4E/2-3). Additionally, the claimant vacationed in Virginia in July 2016, the month after the PVI procedure (1F/12, 14). Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated.

(R. 19-20.)

### 1. Medium work

As noted above, the ALJ determined that Plank's impairments limited him to work at the medium exertional level and prevented him from ever climbing ladders, ropes or scaffolds. Plaintiff argues that the ALJ "failed to explain what activities of daily living would lead to a conclusion that plaintiff could do medium work," and that the ALJ's analysis "omitted evidence and ignored subjective complaints without citing medical evidence which contradicted those complaints." (Pl. Br. at 12, § A.) He acknowledges that the hearing testimony demonstrated that

---

[2] Ejection fraction is a measurement of the percentage of blood that is pumped out of a filled ventricle with each heartbeat. A normal ejection fraction is about 50% to 75%. A reduced ejection fraction may be caused by weakness of the heart muscle, such as cardiomyopathy; a heart attack that damaged the heart muscle; heart valve problems; or long-term, uncontrolled high blood pressure. *See* https://www.mayoclinic.org/tests-procedures/ekg/expert-answers/ejection-fraction/faq-20058286 (last visited July 19, 2022).

he performed house cleaning for a few hours at a time several times a week and that he mowed his lawn for a few hours a week. He argues, however, that these activities would not "rise to the level" of medium work, which requires exertion for many more hours per day. (*Id.* at 13.) He also notes that the ALJ made reference to him having taken a vacation but faults him for not asking him about this during the hearing nor acknowledging that the subject of his vacation came up in the treatment notes only because he reported to his doctor that he had a bleeding incident during the vacation. He accuses the ALJ of picking and choosing the evidence upon which to decide the case and contends that the ALJ failed to "point to specific medical evidence to denigrate the plaintiff's subjective complaints." (*Id.* at 15-16.)

We are not persuaded by Plaintiff's approach to this issue. We evaluate whether there is substantial evidence to support the ALJ's RFC assessment. While Plaintiff testified that he could lift only 10-15 lbs. (R. 40), the state agency reviewing physician expressed the opinion that he was capable of medium work. *See* R. 49-50 (reflecting assessment of Harshadkumar Patel, M.D. following state agency record review). In this record lacking any other opinion evidence, and in the absence of obvious error in that opinion, the opinion of the state agency physician alone supplies substantial evidence in support of the ALJ's RFC finding. Moreover, Plank's activities of daily living were not at odds with the opinion evidence of Dr. Patel and the RFC finding of the ALJ that he could perform work at the medium level. As the Commissioner observed in her brief, the record contains no evidence to support that Plank is *more limited* than the ALJ found. There are no findings in the treatment records of reduced strength or other objective abnormal findings that would support a limitation to something less than medium exertional work. The medical record reflects that Plank has had an irregular heartbeat, which was treated with procedures in 2013

7

and 2016 and thereafter with medication. Neither this condition nor the medication for it would support additional functional limitations.

We are also not persuaded by Plaintiff's arguments concerning the ALJ's reference to his vacation. The Regulations advise that adjudicators will consider *all* of the relevant evidence in the record when assessing an individual's RFC, and explicitly includes reports of daily activities. *See* 20 C.F.R. §§ 404.1512(a), 404.1545(a). The Commissioner's Rulings also envision the RFC assessment encompassing both medical and nonmedical evidence to support the RFC conclusion, and specifically includes "daily activities" as relevant nonmedical evidence. *See* SSR 96-8p. The fact that Plaintiff's vacation was mentioned in a medical record rendered it fair game for reference by the ALJ as to Plaintiff's condition. The ALJ was not obligated to inquire of Plaintiff about it at the hearing before relying on it as evidence that Plank may not be as impaired as he suggested. While we are not convinced that the question of his vacation may be worthy of comment, we accept that it may be used as corroborative evidence. The ALJ did not err in pointing to this evidence as he did.

2. **Obesity**

Plank also contends that the ALJ failed to assess the effects of his obesity combined with his other impairments as required by Social Security Ruling (SSR) 02-1p.[3] That Ruling requires an ALJ to consider the effects of obesity on a claimant's other severe and non-severe impairments throughout the evaluation process. Plank argues that, although the ALJ identified obesity as a severe impairment at Step Two, he failed to indicate whether or to what extent the interaction of

---

[3] SSR 02-1p has been rescinded and replaced by SSR 19-2p, which became effective May 20, 2019. 84 Fed. Reg. 22924, 22924 (May 20, 2019). However, SSR 02-1p was still in effect on the date of the ALJ's decision and is thus the ruling applicable to this case. *See id.* at n. 14 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

obesity and Plank's other impairments affected his RFC analysis. He contends that the ALJ merely stated that consideration of obesity had been taken into account without actually providing any analysis. He faults the ALJ for providing no analysis for the Court to review as to "a potentially critical issue." (Pl. Br. at 17.) We find the ALJ's analysis to be proportional to the role of obesity in Plaintiff's claim.

The ALJ devoted significant discussion in the decision to the affect of obesity on Plank's condition and his review of Plank's application. His discussion provides a useful introduction to the applicable Ruling:

> Social Security Ruling 02-1p requires Administrative Law Judges to consider obesity in determining whether claimants have medically determinable impairments that are severe, in determining whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. The Clinical Guidelines issued by The National Institutes of Health define obesity as present in general where there is a body mass index ("BMI") of 30.0 or above. BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). We generally will rely upon the judgment of a physician as to whether an individual is obese; the record documents BMI measurements above 30.0 (i.e. 1F/16; 2F/1).
>
> As indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation that might be expected from arthritis alone. In addition, obesity may limit and individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein.

(R. 19.) The decision went on to review the stable cardiac condition. The ALJ explained that this condition warranted certain limitations, noting that a "limitation to medium work with no climbing ladders, ropes, or scaffolds accommodates symptoms arising from the heart condition, as well as

9

the effect that obesity may have on this condition and resulting symptoms[.]" (R. 19.) He also noted the environmental conditions to be avoided, as they that might trigger shortness of breath. (*Id.*) He also recognized that Plank "cannot have exposure to hazards to accommodate the effect that his symptoms, medication side effects, or both may have on his ability to work safely around hazards." (R. 20.) Despite these limitations, however, the ALJ concluded that "[t]he evidence of record does not support finding any greater limitations." (*Id.*) He proceeded to explain how the record demonstrated that the symptoms and limitations alleged by Plank may have been overstated, as treatment records showed that his symptoms improved and that he performed activities without problems. (*Id.*)

We find the ALJ's analysis to have been adequate. Plaintiff points to no evidence that the ALJ should have recognized relating to obesity or how consideration of his obesity in light of that other evidence would have required any additional restriction. None of Plaintiff's medical providers ever indicated in their notes that Plank's weight created any functional limitations or that obesity affected his other medical conditions in any way. As much as Plaintiff faults the ALJ for making a cursory analysis of the obesity issue, we find that Plaintiff's inability to point to the impact of obesity on his ability to perform work as set out in the ALJ's RFC finding is the more significant matter. We will not vacate the ALJ's decision and remand based on speculation regarding a claimant's obesity. *Cf.* SSR 02-1p (declaring that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments" but instead will "evaluate each case based on the information in the case record").

**B.  The ALJ's finding in the RFC assessment accounted for the credibly-established limitations.**

Plaintiff separately contends that the ALJ's RFC finding omitted important limitations that affect his ability to "safely" perform the jobs identified by the VE. He points to his testimony that

10

his blood thinner medication makes him bleed quite easily with even a small wound and that this renders him more susceptible to complications from what might otherwise be minor injuries.[4] He contends that the jobs identified by the VE would expose him to moving machinery and that the ALJ should have developed a further record with the VE about whether the identified jobs would have exposed him to prohibited hazards. (Pl. Br. at 8.) He notes that while the VE was specifically asked hypothetical questions about jobs available for someone who must avoid hazards "including moving machinery," the RFC finding that the ALJ ultimately made *in the written decision* simply precluded work involving "hazards" without further specificity. (Pl. Br. at 5.)

With respect to the effect of his blood thinner medication, we note that the ALJ's decision reflects an accommodation. In explaining the limitations on Plank's ability to work that the ALJ found were warranted, the ALJ stated that Plank "cannot have exposure to hazards to accommodate the effect that his symptoms, *medication side effects*, or both may have on his ability to work safely around hazards." (R. 19-20 (emphasis added).) We take the ALJ at his word that he considered the needs of Plank to work safely. Moreover, the jobs identified by the VE did *not* involve "moving mechanical parts" – which the ALJ had indicated in his hypothetical question were to be excluded (R. 41-42) – but rather involved only "machinery." As noted by the Commissioner, the DOT definitions of both "Breading Machine Tender" and "Package Sealer, Machine" are explicit that "moving mechanical parts" are *not* present in either of those positions. *See* Def. Br. at 12 (citing DOT definitions for job codes 524.685-010 and 920.685-074). Therefore, we see no error in what Plaintiff describes as the ALJ's failure to have inquired further into the duties of these two jobs.

---

[4] He also testified at the hearing that there was an increased risk of stroke if his blood thinner medication was not being taken properly to get the right degree of blood coagulation. (R. 39-40.)

Plaintiff has not identified a deficiency in the RFC finding as to Plaintiff's limitations due to his cardiac condition and/or the effects of the medication he takes for it.

## V.     CONCLUSION

We have not found any legal error in the ALJ's decision. Moreover, the finding that Plank is able to perform a restricted range of work at the medium range of exertion is supported by substantial evidence set forth in the decision. We will affirm. An appropriate order follows.